THE EMPLOYERS FIRE INS. CO. ET AL., APPELLEES, *v.* THE CLIFF WOOD COAL & SUPPLY CO., APPELLANT.

(No. 964—Decided June 25, 1948.)

*Mr. F. Wemmer Gooding,* for appellees.
*Messrs. Cable & Cable,* for appellant.

GUERNSEY, J. This is an appeal on questions of law from a judgment of the Municipal Court of Lima, in an action numbered 14588 in that court, wherein the appellees herein, The Employers Fire Insurance Company, a corporation, of Boston, Massachusetts, and Ora M. Green, A. J. Downhour, John Querry and Thomas Sawyer, partners doing business as G & F Supply Company of Lima, Ohio, were plaintiffs, and

the appellant herein, Cliff Wood Coal & Supply Company, was defendant.

The action is one for damages in the sum of $458.99 for injuries to a truck owned and operated by the partnership, which injuries were alleged to have been sustained through the negligence of an employee of defendant engaged in operating a coal truck owned by it.

The insurance company claims as subrogee of the partnership, to the extent of $358.99 of such damages, while the partnership claims to the extent of $100 of such damages for which it was not reimbursed by the insurance company under its policy of insurance.

There is no dispute between the parties as to the amount of the damages, the only matter in controversy being as to whether the defendant is liable for the same.

The Municipal Court tried the cause without the intervention of a jury, no jury being demanded, and rendered judgment in favor of plaintiffs against defendant for the full amount claimed.

It is from that judgment the appeal is taken to this court.

As disclosed by the bill of exceptions, the following are the material facts in the case:

The Shawnee road is a north and south road west of the city of Lima. It is a black-top paved road of average width.

On December 30, 1946, defendant's coal truck operated by its employee Emmett Taylor was being driven south on the west side of Shawnee road at a point about 1,000 feet north of the Ottawa river bridge when the driver of the truck turned to the left into and over the east side of the highway for the purpose of driving the truck into a lane running east from the highway which lane the truck entered.

For some time prior to defendant's truck making such turn it had been followed on the highway by a concrete mixer truck owned by the plaintiff partnership and operated by its employee, one George Kill.

What happened immediately preceding and following the turn of defendant's truck into and over the east side of the highway and into the lane, which is determinative of the rights of the parties to the action, appears in the testimony of Kill, introduced by plaintiffs in chief, and in a written statement made by Kill shortly thereafter, offered in evidence by the defendant, marked exhibit A and made a part of the bill of exceptions.

The material parts of the testimony mentioned are as follows:

"Q. Will you tell us just what happened out there at that time? A. Well, I imagine it was about four, little after four—around four—I was going south, going back to the plant to get another load of concrete, and I was following this coal truck, and I started around him and, I'd say oh, I was—I got on the left-hand side of the road and I was just ready to blow my horn to pass him and here he made a left turn in front of me. I hit the brakes and give a quick turn to the right. I missed him and swung on the road and lost control of the truck and it turned over, and he turned in the driveway and he came back, or came to the truck and just as I was getting out he asked me if I was hurt—."

The material part of the written statement is as follows:

"My name is George Kill, age 24, and I live at 201 Pears avenue in Lima, Ohio. On December 30, 1946, I was working for Green and Sawyer contractors here in Lima and I was driving their concrete mixing truck

south on the Shawnee road at about 4 in the afternoon. The road was dry and I was driving about 40 miles per hour. South of the Shawnee Country Club there is a road that turns east going back to the Shawnee stables, it is a lane. I had been following a truck driven by Taylor who was driving a truck for Cliff Wood Co. I had been following him 2 or 3 hundred feet behind him. As Taylor's truck began to slow down he was still north of this lane going back on the Shawnee Rd. I saw him begin to slow, so decided to pass him on the left, but he didn't signal with his hand and said so later. When the front of my truck was about even with the rear of Taylor's I was slowed considerably from 40, when suddenly Taylor began to turn left into my path. We were both still about 75 feet north of the lane leading east. I was just getting ready to sound my horn when he began to pull to the left as I mentioned above. When I saw him pull to the left I was on the west side of the road, but I immediately applied the brakes and pulled sharply to the right and then I began to slide but I got past his truck on the west side of the road and after getting by him turned back to the left to straighten up my truck but it continued to slide. I had my brakes on all the time from the time I pulled to the right to miss him, until the truck turned over. My truck slid and swerved from side to side from where I first braked it to miss hitting him until it turned over just about 10 feet past the lane going east to the riding stables. My truck rolled completely at least once and it might have rolled more. It came to rest with its front facing east, crossways across the road and on its left side.''

The damages complained of were sustained in the overturning of the plaintiff partnership truck. There was no collision between the trucks.

There is no conflict in the evidence except on the question of whether the driver of defendant's truck signalled his intention to turn. Defendant's driver testified positively he gave such signal, while the driver of the plaintiff partnership truck testified positively that no signal was given by the driver of defendant's truck.

The defendant assigns error in a number of particulars, all predicated upon its contention that the court erred in overruling the motion of the defendant for a verdict in its favor at the close of the testimony for the plaintiffs and renewed at the close of all the evidence in the case, for the reason, as contended by the defendant, that the evidence introduced on behalf of the plaintiffs, as well as all the evidence in the case, shows that plaintiffs' employee operating plaintiffs' truck was, as a matter of law, guilty of contributory negligence directly contributing to cause the injuries sustained by plaintiffs' truck, in that he drove his vehicle upon the highway at a greater speed than would permit him to stop within the assured clear distance ahead, in violation of provisions of Section 6307-21, General Code, and in that he failed to signal defendant's vehicle of his intention to pass it, as required by the provisions of paragraph (a) of Section 6307-27, General Code.

We will first consider whether, on the evidence in the case, the driver of the plaintiff partnership truck was guilty of contributory negligence in violating the provisions of Section 6307-21, General Code, and then consider whether he was guilty of contributory negligence in violating the provisions of paragraph (a) of Section 6307-27, General Code.

The evidence in this case shows conclusively that at and immediately prior to the time defendant's truck

turned into and across the east side of Shawnee road and into the lane that it was proceeding in the west lane of traffic on the highway and plaintiff partnership truck was proceeding in the east lane of traffic on the highway.

The provisions of Section 6307-21, General Code, are applicable only to vehicles proceeding in the same lane of traffic, so the driver of the plaintiff partnership truck was not guilty of contributory negligence by reason of any violation of the provisions of that section, and the court properly overruled defendant's motion for verdict in defendant's favor for the violation by the plaintiff partnership's driver, of such provisions of that section.

Section 6307-27, General Code, the other section which the defendant contends the evidence shows was violated by the driver of the plaintiff partnership truck, reads as follows:

"The following rules shall govern the overtaking and passing of vehicles or trackless trolleys proceeding in the same direction, subject to those limitations, exceptions, and special rules hereinafter stated:

"(a) The operator of a vehicle or trackless trolley overtaking another vehicle or trackless trolley proceeding in the same direction shall signal to the vehicle or trackless trolley to be overtaken and shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle or trackless trolley.

"(b) Except when overtaking and passing on the right is permitted, the operator of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle."

The word "overtake" and its derivatives, as used in the section, mean: "To catch up with and pass, as in an automobile." Webster's International Dictionary, Second Edition.

As under the provisions of paragraph (a) of the section the signal is required to be given by the operator of the overtaking vehicle "to the vehicle * * * to be overtaken," it is clear that the signal is required to be given prior to the time passing is attempted.

The purpose of the section requiring the giving of a signal by the overtaking vehicle is to warn the driver of the overtaken vehicle of the intention of the driver of the overtaking vehicle to pass so that he will not turn his vehicle to the left into the lane of traffic of the overtaking vehicle and thereby obstruct or interfere with its passage, and so, if necessary to permit the passage of the overtaking vehicle he will give way to the right with the vehicle driven by him.

It is, therefore, obvious that the statute requires the signal to be given by the operator of the overtaking vehicle at such time and place before starting to pass, that the signal may be effective to accomplish the purpose mentioned.

It will be noted from the above quoted evidence in the instant case, that the driver of the overtaking vehicle violated the provisions of Section 6307-27, General Code, when he "started around" the overtaken vehicle without giving the required signal, that at the time the overtaken vehicle turned to the left into and across his lane of traffic, he had, by his failure to conform to the requirements of the section, operated his vehicle in such a position that the giving of a signal by him could not accomplish the purpose of the statute, and that he could have avoided a collision between the two vehicles only by proceeding in the

manner he proceeded, resulting in the injuries to the truck driven by him.

While for the purpose of this case we must assume that the driver of the overtaken vehicle was negligent as a matter of law in failing to give a signal of his intention to turn, the driver of the overtaking vehicle, by his failure to comply with the provisions of Section 6307-27, General Code, above mentioned, was as a matter of law guilty of negligence directly contributing to the injuries sustained by the truck driven by him, precluding the plaintiffs from recovering damages from the defendant for such injuries.

For the reasons mentioned, the trial court erred in overruling the motion of the defendant made at the close of plaintiffs' evidence and renewed at the close of all the evidence, for a finding and judgment in defendant's favor.

For this error the judgment will be reversed, and this court, rendering the judgment the trial court should have rendered, will sustain the motion and enter final judgment in favor of defendant, dismissing plaintiffs' petition.

*Judgment reversed.*

JACKSON, P. J., and MIDDLETON, J., concur.